I respectfully dissent from the majority decision to reverse the Deputy Commissioner's Opinion and Award and would vote to affirm on the grounds that the greater weight of the medical evidence supports the position taken by Drs. Powell and Dupuy regarding whether plaintiff reached maximum medical improvement and was able to return to work.
Dr. E. Neal Powell, an orthopedic surgeon, initially examined plaintiff on 18 September 1995, three days after he suffered an admittedly compensable injury to his lower back. Lumbar spine x-rays revealed no evidence of fracture, abnormalities, or degenerative changes. Dr. Powell diagnosed plaintiff with a lumbar back strain and recommended a physical rehabilitation program. When plaintiff returned to Dr. Powell on 24 October 1995, he complained of continuing pain despite being able to get on and off the exam table without difficulty, and perform a toe and heel walk satisfactorily. Dr. Powell told plaintiff that he had no explanation for plaintiff's degree of difficulties, and he noted that plaintiff presented several Waddell's signs for inappropriate pain behavior.
Dr. Powell examined plaintiff on 26 December 1995, and found plaintiff to have definitely improved. He released plaintiff and recommended that he return to work. Dr. Powell saw plaintiff twice in January 1996, and noted that plaintiff continued to allege various "bizarre" complaints which were not medically related to his lumbar condition. An MRI revealed that plaintiff had some degenerative disk protrusions, but Dr. Powell stated that it was unlikely that these were causally related to his compensable injury.
On 7 February 1996, plaintiff began seeing orthopedic surgeon Dr. David Dupuy. Dr. Dupuy examined plaintiff's MRI, and noted the degenerative disk changes seen by Dr. Powell. Dr. Dupuy categorized the disk changes as indicative of "general wear and tear," but acknowledged that there was no real way to tell whether they occurred gradually or as a result of plaintiff's traumatic incident.
Dr. Dupuy testified that the average back sprain begins getting well at ten days, and is well at six weeks. Two thirds of the cases are well at about three months. Plaintiff's continuing complaints of pain at six or seven months after the injury placed him in the realm of five percent of patients with lower back sprain injuries. When plaintiff failed to improve by 30 April 1996, it placed him in the last two or three percent of those recovering from back sprains. On 3 April 1996, Dr. Dupuy gave plaintiff a permanent partial disability rating of three percent. He testified that physical therapy would have its maximum effect during the first six weeks following the injury; therefore, he believed plaintiff had reached maximum medical improvement in December 1995 when Dr. Powell released him to return to work. Having no medical basis for plaintiff's allegations of continuing pain, Dr. Dupuy offered the recommendation that plaintiff enroll in a pain management program. However, he noted that this would not change plaintiff's rating, but would be limited in benefit to assisting plaintiff in learning to live with his condition.
It is important to note that the sole basis for Dr. Dupuy's belief that plaintiff continued to suffer any disability from his compensable injury were plaintiff's own allegations of continuing pain. Dr. Dupuy found no medical basis to support plaintiff's supposed condition, and could offer no medical treatment beyond management therapy.
On 1 May 1996, plaintiff presented to orthopedist Dr. Richard Avioli, seeking a second opinion regarding his permanent disability rating. Dr. Avioli reviewed the notes of Drs. Powell and Dupuy, and examined plaintiff. Dr. Avioli did not observe any Waddell's signs during the physical exam; therefore he took plaintiff's allegations of pain as true and determined that plaintiff's disability continued. He ordered a CT myelogram which failed to show any medical basis for plaintiff's complaints, and performed a neurological exam which produced normal responses. Dr. Avioli recommended that plaintiff participate in a reasonable back rehabilitation program, but admitted that he did not know anything about the therapy plaintiff received while under the care of Dr. Powell. Again, it is noted that Dr. Avioli based his diagnosis of plaintiff solely upon plaintiff's complaints, without any medical evidence to support the alleged condition.
It is the opinion of the undersigned that the medical testimony synopsized above does not support the conclusion that plaintiff remains disabled as a result of his compensable injury. The majority has chosen to discount the opinions of Drs. Powell and Dupuy, and give greater weight to that of Dr. Avioli. In finding of fact 3, the majority attaches some significance to the allegation that Dr. Powell only released plaintiff to return to work at plaintiff's own request, making it appear that Dr. Powell reached no conclusions of his own regarding plaintiff's status. However, Dr. Powell's testimony clearly states that based on his examination of plaintiff and the physical therapy report, he "thought [plaintiff] could return to his job." In finding of fact 12, the majority has discarded Dr. Dupuy's evaluation of plaintiff's maximum medical improvement and ability to return to work because "his opinions were offered despite having not retracted his earlier recommendation that plaintiff enter a pain management program," apparently suggesting that the two statements are contradictory. In doing so, the majority disregards Dr. Dupuy's conclusion that the sole benefit to be gained from the pain management program would be plaintiff's learning to live with his condition, rather than attaining any level of rehabilitation.
Lastly, I would point out that Dr. Avioli admitted that plaintiff's subjective complaints were the sole basis for his opinions. In placing all credibility on the conclusions of Dr. Avioli, the majority has de facto found that plaintiff's own contention of continuing pain, supported only by the testimony of his wife, was credible. The Deputy Commissioner, who had the opportunity to observe both witnesses during the compensation hearing, implicitly found the testimony of plaintiff and his wife not to be credible. The majority Opinion and Award offers nothing to rebut this finding.
For these reasons, I would affirm the Deputy Commissioner's denial of benefits.
 S/ ______________ DIANNE C. SELLERS COMMISSIONER